THOMPSON v. BURK.

(Third Division. Fairbanks. July 18, 1904.)

1. MINES OND MINERALS—AGENCY—TRUSTS.

An agent, trustee, or other person who occupies a fiduciary relationship toward the original locator of a mining claim, will not be permitted to relocate it secretly, and thus secure to himself advantages flowing from a breach of his obligations.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 58, 62, 132.]

2. SAME.

Defendant located a placer mining claim, but made no discovery. Plaintiff made a subsequent relocation, and thereafter, without notifying defendant of that fact, entered into a contract with him to dig a discovery shaft for him on the claim, which he completed, and in which he discovered gold. *Held*, that the discovery inured to perfect defendant's senior location, and that plaintiff was estopped to deny his principal's title.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 58, 62.]

3. EJECTMENT—EQUITABLE DEFENSES.

In an action of ejectment brought under the Alaska Code, abolishing distinctions between actions at law and suits in equity, the defendant may plead and rely upon equitable defenses in support of his possession and title to mining claims.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Ejectment, §§ 107–114.]

Suit in ejectment, jury waived, and trial before the court. Defendant, Burk, first located the placer mining claim in controversy on February 11, 1903. He set four corner stakes and two center stakes. Upon one of his center stakes he wrote a notice of his location, and wrote his name on the corner stakes. He prepared his notice of location, and caused it to be filed and recorded in the recorder's office on April 15, 1903, and within the time required by law. His notice of location designated the claim as on the "right limit" of Cleary creek; it is on the left hand looking down stream.

The plaintiff entered upon the same claim on May 11, 1903, inspected the prior locator's stakes and lines, and made a relocation thereof by writing a notice on another center stake, which he tied to defendant's center stake. He thereupon prepared a certificate of relocation, and caused it to be filed and recorded in the recorder's office on May 19, 1903, and within the time required by law. His notice of location designated the claim as on the "left limit" of Cleary creek; it is on the left hand looking down stream.

Within 10 days after making his relocation, the plaintiff met the defendant near Circle City, more than 100 miles across the mountains, and asked him about his claim, and obtained from him a contract to prospect it to discover mineral; the consideration for his labor being the agreement by defendant to give him an undivided half interest therein upon his agreement to sink two holes to bed rock. Plaintiff did not inform the defendant that he had relocated the claim, and defendant was ignorant of that fact until October following, and relied upon his contract with plaintiff to procure his preliminary discovery work to be done.

In June, 1903, the plaintiff entered upon the labor of prospecting the claim, and discovered mineral in the shaft which he sank thereon. In October, 1903, the plaintiff again met the defendant across the mountains, where defendant had remained

that summer, and then for the first time informed him that he had relocated the claim, and occupied an antagonistic position toward him. Immediately thereafter the defendant entered upon the claim, and in December, 1903, sank a shaft to bed rock, and made a second discovery of gold thereon. Plaintiff now brings this suit in ejectment to recover possession of the claim from defendant, who is in possession.

L. C. Hess, for plaintiff.

Claypool & Cowles, for defendant.

WICKERSHAM, District Judge. The plaintiff objects to the validity of the defendant's location—first, that his notice of location is fatally defective, in that it describes the placer mining claim in controversy as being on the "right limit" of Cleary creek, when in fact it was on the "left limit"; and, second, that defendant did not make a discovery of mineral upon the claim until after the plaintiff's rights had intervened and vested. The defendant answers: First, that the plaintiff is estopped, by his contract as the agent of defendant, to deny his discovery and title; second, that in law the discovery of mineral made by the plaintiff on this claim in June and July, 1903, was the discovery, not of the plaintiff, but of the defendant; and, third, that plaintiff must recover, if at all, on the strength of his own title, and not on the weakness of defendant's.

Was Thompson made the agent of Burk by their written agreement of May, after both claims had been staked and recorded, wherein Thompson agreed to do the necessary work on Burk's claim for discovery and prospecting, and did such discovery so made by Thompson in July inure to perfect the principal's claim or the agent's? Burk's claim was located and staked February 11th and recorded April 15th; Thompson relocated and staked May 11th and recorded May 19th. After May 19th, Thompson agreed in writing, for a valuable consideration—to wit, one-half the claim—to sink two holes to bed

rock on that claim for discovery and prospecting purposes, and did so in June and July thereafter, and made a discovery of mineral. Thompson did not disclose his relocation to Burk at the time of making the contract to do the prospecting for discovery, nor afterwards until in October, 1903, and now claims that the discovery so made by him on Burk's claim was intended by him to be in support of his relocation. Burk relied upon his contract with Thompson to do the work for discovery, and was entirely ignorant of any pretended claim of Thompson's except that contained in their contract for labor.

It is a well-settled principle in the law of land locations that if an agent locates land for himself which he ought to locate for his principal he will be declared by a court of equity to hold it in trust for his principal. Massie v. Watts, 6 Cranch (U. S.) 148, 3 L. Ed. 181, affirmed in Kerr v. Watts, 6 Wheat. (U. S.) 550, 5 L. Ed. 328; Irvine v. Marshall, 61 U. S. 558, 15 L. Ed. 994; and Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862, 36 L. Ed. 719. See, also, Lakin v. Sierra Buttes Min. Co. (C. C.) 25 Fed. 337; Hunt v. Patchin (C. C.) 35 Fed. 816; Book v. Justice Min. Co. (C. C.) 58 Fed. 106; Moore v. Moore, 121 Fed. 737, 58 C. C. A. 19; Lockhart v. Rollins (Idaho) 21 Pac. 413.

In Book v. Justice Min. Co. Judge Hawley said:

"If a party, in pursuance of such an understanding, at the expense of another, locates the claim in his own name, he holds the legal title to the ground in trust for the benefit of the party for whom the location was made, and such party could, upon making the necessary proofs, compel the locator of the mining claim to convey the title thereof to him, although the agreement so to do was not in writing. This familiar principle has been often applied in cases where a party has entered into an oral agreement to locate mining ground for the joint benefit of himself and others, and makes a location in his own name. It has always been held that such oral agreements are not within the statute of frauds. Gore v. McBrayer, 18 Cal. 582; Moritz v. Lavelle, 77 Cal. 10, 18 Pac. 803, 11 Am. St. Rep. 229; Hirbour v. Reeding, 3 Mont. 15; Welland v. Huber, 8 Nev. 203."

It is a general rule of law that one who occupies a fiduciary relationship towards the business or property of another is prohibited from acquiring an antagonistic interest therein. An agent, trustee, or other person, holding confidential relations with the original locator, will not be permitted to relocate mining claims, and secure to himself advantages flowing from a breach of trust obligations. 1 Lindley on Mines (2d Ed.) § 407; Haws v. Victoria Min. Co., 160 U. S. 303, 16 Sup. Ct. 282, 40 L. Ed. 436; Turner v. Sawyer, 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; Lockhart v. Johnson, 181 U. S. 516, 21 Sup. Ct. 665, 45 L. Ed. 979; Utah Min. Co. v. Dickert, 6 Utah, 183, 21 Pac. 1002, 5 L. R. A. 259; Largey v. Bartlett, 18 Mont. 265, 44 Pac. 962; Fisher v. Seymour, 23 Colo. 542, 49 Pac. 30; Argentine Min. Co. v. Benedict, 18 Utah, 183, 55 Pac. 559; Van Wagenen v. Carpenter, 27 Colo. 444, 61 Pac. 698.

The burden of proof, however, is upon the defendant to establish the agency in this case, and it must be done by full, clear, and satisfactory evidence. Copper River Min. Co. v. McClellan, ante, p. 134.

Counsel for plaintiff stoutly argues that there is no such proof, and that upon the evidence in the case the alleged contract of agency relates to another and different mining claim than the one in controversy—to No. 6 above discovery on the "right limit" of Cleary creek, whereas the claim in controversy is on the "left limit." The evidence of the plaintiff is in the record. He testifies that he first saw No. 6 "left limit" on the 11th day of May, 1903, and says: "I located it—I relocated it." His location notice was then introduced by him, and it states that claim No. 6 left limit was by him "relocated May 11, 1903." This use of a technical term in both his notice of location and evidence may be considered in determining the fact of his prior knowledge of Burk's location of the identical claim. To relocate is to locate that which was formerly located. The Supreme Court of the United States in Belk v. Meagher gives.

even a stronger definition against the claims of the plaintiff. The court in that case says:

"As Belk sets up title only as a relocator of part of the original lode claim, he impliedly admits the validity of the prior location. There can be no relocation unless there has been a prior valid location, or something equivalent, of the same property." Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735.

Plaintiff also admitted in his testimony that he saw Burk's stakes when he relocated on May 11th, wrote his name or notices on Burk's corner stakes, but prepared a new center stake of his own, upon which he wrote a notice, and tied it to Burk's stake; that Burk's notice of location was there, and that the claim actually staked by Burk was claim No. 6 on the "left limit," and not on the "right limit." He also admits in his testimony that he saw Burk's stakes, boundaries, notices, and claim on the "left limit," and made his written agreement with him before he reached Circle City, and examined the recorded notice filed there by Burk, wherein the claim is said to be on the "right limit." Upon being recalled in rebuttal and being asked in relation to his conversation with Burk near Circle in October, the plaintiff testified: "I told him that he did not have his ground recorded on the left limit; that it was on the right limit he had it recorded." Buhro, a witness for defendant, also testified that he asked the plaintiff why he relocated the claim, and "he said it was recorded on the right limit. He claimed that it was on the left limit. He said it was the ground that he relocated it on." This was not denied by plaintiff, and is practically plaintiff's evidence on the same matter. It is a fact, clearly established by the evidence, that plaintiff, having full knowledge of the exact location of defendant's claim on the left limit of Cleary creek, relocated by using his stakes and boundaries, and thereafter made a contract as his agent to do the discovery work for him before he examined the records and discovered the error now urged against the validity of defendant's prior location.

Upon the admitted facts in this case and the rules of law applicable thereto, the plaintiff became the agent of defendant by his agreement to do the discovery work on the claim so located and marked by defendant on the left limit of Cleary creek. His discovery of gold thereon in July was the discovery of the defendant, and perfected the defendant's senior location, and not plaintiff's junior relocation. The plaintiff had, admittedly, made no discovery in aid of his relocation prior to his contract with defendant as agent, and no other rights had intervened or vested. It is a general rule in mining locations that while discovery, marking the boundaries, and recording are prerequisites to a valid mining location, it is immaterial in what order they are performed, so that each is performed before other rights intervene. 1 Lindley on Mines, § 330; Erwin v. Perego, 93 Fed. 608, 35 C. C. A. 482.

This is an action of ejectment brought by plaintiff, Thompson, and his counsel urges that under the rule laid down in Lockhart v. Johnson, 181 U. S. 516, 21 Sup. Ct. 665, 45 L. Ed. 979, the strict legal title must prevail. The court there said:

"In the courts of the United States in an action of ejectment the strict legal title must prevail, and if the plaintiff has only equities, they must be presented and considered on the equity side of the court."

The case at bar, however, stands just the other way. It is the defendant here who pleads in his answer an equitable defense against the strict legal title in ejectment set up by the plaintiff. Under our Code system, the distinctions between actions at law and suits in equity and the forms of all such actions and suits are abolished; we have but one form of action for the enforcement or protection of private rights, which is denominated a "civil action." Section 1, Code Civ. Proc. It also provides that:

"All forms of pleading heretofore existing in actions at law and suits in equity are abolished, and hereafter the forms of pleading in causes in law and equity in courts of record and the rules by which

the sufficiency of such proceedings is to be determined shall be those prescribed by this Code." Section 54, Code Civ. Proc. amended.

Sections 63 and 64 of the Code prescribe what an answer shall contain, and the latter section provides that the defendant may set forth by answer as many defenses and counterclaims as he may have, and these defenses may be either legal or equitable. One of the defenses set forth by the defendant in his answer puts in issue the mistake in his notice of location, alleging his claim to be on the "right limit" instead of on the "left limit" of Cleary creek. Though the answer is informal and meager in its allegations, no motion was made to reform it or demurrer to test its sufficiency. The evidence offered in support of that defense is full and sufficient. Upon the answer, under the Code system, the defendant may protect his possession by equitable defenses. The rule of Lockhart v. Johnson does not apply.

Upon the law and the facts in this case, the court holds that the plaintiff, Thompson, became the agent of the defendant, Burk, to do the prospecting on the claim in controversy; that Burk's promise to give him a half interest therein was a sufficient consideration for the contract; that accepting such contract, failing to notify Burk of this relocation, lulling him into a fancied security, and entering on the claim and discovering gold, were all acts inuring to Burk's benefit, and such discovery perfected Burk's senior location and not Thompson's junior relocation. Findings of fact, conclusions of law, and judgment may be prepared accordingly.