TATE et al. v. HOLMES et al.

(Circuit Court of Appeals, Ninth Circuit.   October 6, 1896.)

No. 285.

DEEDS—CAPACITY TO EXECUTE—FRAUD.

In an action to set aside a deed upon the grounds that the grantor was of unsound mind, and the grantee had taken advantage of that fact to fraudulently procure the conveyance, it appeared that the grantee had lived with the grantor, who was 87 years old, for many years, and cared for her, and was regarded by her with the warmest feelings of gratitude. It was shown that the conveyance was made in pursuance of the fixed intention of the grantor, and the wishes of her husband, from whom she had inherited the property, and whose niece the grantee was.   There was evidence to show that the grantor's mind was failing, but it nearly all related to a period subsequent to the execution and delivery of the deed, while lifelong friends testified that at the time of·such execution she was in full possession of all her faculties.   It was shown that when the grantor executed the deed no one was present except the attorneys, and that they took particular pains that she should be aware of the effect of the conveyance, and her words and manner convinced them that she fully understood the transaction, and was capable of executing the deed.   *Held,* that the deed was valid.

Appeal from the Circuit Court of the United States for the District of Oregon.

This was an action by Mary R. Tate and others, heirs at law of Eliza Francis, against Hulda G. Holmes and Byron Z. Holmes, to set aside a conveyance from said Eliza Francis to the first-named defendant.   Judgment was rendered for defendants, and plaintiffs appeal.

A. H. Fanner, for appellants.

L. L. McArthur, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.   The appellants, as heirs at law of Eliza Francis, deceased, commenced a suit in the circuit court to set aside a certain conveyance made by the said Eliza Francis on January 21, 1890, conveying to Hulda G. Holmes, one of the appellees, lots 3 and 4 in block 254 in the city of Portland, Or.   It was alleged in the bill that Eliza Francis died on April 30, 1893, and that for a number of years prior thereto the appellees, the defendants in the bill, resided with her in her house, situated on said property; that they had control of her and of the said premises, and that she lived with them, and under their protection and control, until her death; that about five years before her death she became of unsound mind, by reason of extreme old age, and that she was weak and feeble in body, and incapable of leaving her room except occasionally; that her memory was destroyed; that she did not recognize her relatives or her most intimate acquaintances when they called to see her, and that during all of said period she was in such a state of mental imbecility as to be incapable of transacting business, or of understanding the nature or consequence of any business transaction; that the defendants caused a deed to be prepared and

drawn up, conveying said property to said Hulda G. Holmes, and procured and induced said Eliza Francis to sign and acknowledge the same; that at the time of signing said deed the said Eliza Francis was 87 years old, and was of unsound mind, and incapable of understanding the nature and consequence of the deed; that for five years and more before her death the defendants, in order to take advantage of her, and for the purpose of procuring said conveyance, kept her isolated from her friends and acquaintances, refused to allow her friends to visit or converse with her, and intercepted letters sent her by some of the complainants, and they took advantage of her condition for the purpose of defrauding the complainants out of the inheritance of said property as her heirs at law; and that by the use of misrepresentation, fraud, undue influence, persuasion, and artifice they compelled her to make the said conveyance. The answer of the defendants put in issue the allegations that the said Eliza Francis was of unsound mind, or that they procured the said conveyance by fraud or otherwise, denied all the substantial allegations of the bill, excepting the fact of the said conveyance, and alleged that it was the intention of the said Eliza Francis to give said property to the said Hulda G. Holmes; that said intention was formed many years prior to the date of the said deed, and the said conveyance was made in pursuance of said intention; that the property was devised to the said Eliza by her husband, Simeon Francis, who was the uncle of the said Hulda G. Holmes; and that after the death of the said Simeon, and in pursuance of his dying request, the said Eliza had induced the defendants to come to her house, and live with her, and that they lived with her at her house from the year 1873 up to the time of her death, in 1893; and that said deed was made in consideration of the care and attention and devotion of the said defendants to her; and that she, at the date of the conveyance, was in the full possession of her mental and physical faculties, and was under no restraint or compulsion from any one. Upon the general issues so presented the circuit court found the equities with the defendants, and decreed that the bill of complaint be dismissed. Upon the appeal it is insisted that the evidence justifies the relief prayed for in the complaint, and that the trial court erred in finding otherwise.

We have carefully considered the evidence contained in the record, and we find no error in the conclusion reached by the circuit court. Many witnesses testified upon behalf of both parties to the suit concerning the mental condition and physical health of Eliza Francis during a period of five years or more preceding her death. If the case rested upon the testimony offered by the complainants alone, it is doubtful whether it would be sufficient to justify the court in setting aside the conveyance. There is nothing in it to convince the court that fraud was practiced upon the grantor of the deed, or that artifice was resorted to to obtain the conveyance, or that its execution was procured either by the defendants or their counsel or others, or that they or any one interfered with the freedom of the said Eliza Francis, or kept her isolated from her friends, or prevented her free communication with them. Some of the com-

plainants' evidence, it is true, indicates, and probably established the fact, that during the last year of Mrs. Francis' life, and perhaps longer, her mind was failing, and her memory was weak, and that during a portion of that period she was incapable of disposing of her property by deed. But nearly all the evidence of this nature refers to a period subsequent to the date of the execution and delivery of the deed, and has little bearing upon the questions in issue in the suit. If she were in a condition to make the conveyance in January, 1890, it is of little importance that a year later her mind had so failed as to incapacitate her for understanding the nature of such a transaction. Upon the part of the defendants, however, there have been introduced numerous witnesses, who appear to have been fair and disinterested, and several of whom were lifelong friends and acquaintances of Mrs. Francis. The effect of their testimony is to prove beyond doubt that Mrs. Francis, up to the time of the execution of the deed, and for some time thereafter, was in the full possession of her faculties, was a woman of intelligence and of force of character, who exercised her own will, and was not amenable to the control or dictation of any other. The evidence indicates that she entertained a warm feeling of friendship and affection for Mrs. Holmes, the grantee of the deed, and that she did not hold her other relatives, the complainants in the bill, in very high esteem. The evidence shows also that the intention to convey the property to Mrs. Holmes was not suddenly formed, but that it had been in contemplation by Mrs. Francis for some time prior to the date of the deed, and that at different dates subsequent to the conveyance she mentioned to several persons the fact of having given her property to Mrs. Holmes, stated the reasons therefor, and expressed her satisfaction at having done so. It is shown also, by testimony entitled to the highest consideration, that at the time of the execution of the conveyance no one was present with Mrs. Francis save and except the attorneys who prepared and took the acknowledgment of the deed, and from their evidence it is shown that, owing to the extreme age of Mrs. Francis, and the fact that no valuable consideration passed for the deed, particular pains were taken that she should be made fully aware of the effect of the conveyance as divesting her of her property and of her control over the same, and that she, by her words and manner, convinced the attorneys that she fully understood the transaction, and was capable to execute the deed for the purposes therein expressed. While the court will always scrutinize with care a transaction of this nature, especially where the deed is voluntary, or is given for an inadequate consideration, and where the grantor is of extreme age, and is dwelling with the grantee, who thus has the opportunity to exert undue influence, the evidence shows that the present case is not the case of a purchase of property obtained upon an inadequate consideration. It is the case of a conveyance in the nature of a testamentary disposition of the grantor's property, made in consideration of her husband's dying request, and of the fact that the property came to her through her husband's estate, of which estate Mrs. Holmes would have been one of the heirs at law, and which estate the complainants were

not entitled to inherit, and in further consideration of the fact that Mrs. Holmes had, for a period of more than 17 years, rendered to her affectionate attention and service. Under the circumstances, it was a natural and reasonable disposition of the property, and the evidence convinces us that no advantage was taken, no undue influence was exerted, and that the transaction was fair, and was fully understood, and that Mrs. Francis then and always afterwards was satisfied with the disposition she had made of her property. The testimony does not leave these conclusions doubtful in our minds, but, if it did, we would not be disposed to disturb the findings of the circuit court. It is the rule of practice of the supreme court and of the circuit courts of appeals that, where the trial court has considered conflicting evidence, and has made its findings thereon, the findings must be presumed to be correct, and will not be disturbed in the appellate court, unless an obvious error has been made in the application of the law to the facts, or some serious or important error has been made in the consideration of the evidence. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Bank v. Rogers, 3 C. C. A. 666, 53 Fed. 776; Warren v. Burt, 7 C. C. A. 105, 58 Fed. 101.

The decree will be affirmed, with costs to the appellees